UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Thomas Smith, et al.,                              Case No. 3:13 cv 1052

       Plaintiffs

      v.                                          MEMORANDUM OPINION
                                                AND ORDER

Seneca County Commissioners, et al.,

       Defendants

This matter comes before me on the Defendants' motion for summary judgment (Doc. No. 63), Plaintiffs' opposition (Doc. No. 68), and Defendants' reply (Doc. No. 70). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated below, I find the Defendants' motion well taken.

## BACKGROUND

In 2011, Detective Don Joseph of the Seneca County Sheriff's Department was investigating suspected drug dealers. Joseph was part of the drug task force known as the Seneca County Metrich Unit. This unit worked with law enforcement agencies to assist with drug, gang, and career criminal task forces. Joseph worked with a particular confidential informant and his experience with this informant resulted in at least ten convictions as a result of the informant's assistance.

The informant advised Joseph that he met a "Tommy Smith" during a party at the Willow Creek Apartments. The informant advised Joseph that Tommy Smith had some prescription drugs for sale. Joseph and Smith set up a controlled drug purchase to occur on May 27, 2011, at the

Willow Creek Apartments.  This location was chosen because Tommy Smith told the informant he was staying there.

As part of the controlled purchase, Joseph set up visual surveillance a block away.  The informant was outfitted with a video and audio recording device as well as a transmitter so that Joseph could monitor the event as it occurred.  The informant met with the suspect, Tommy Smith, and purchased the pills as planned.  As Joseph observed the events from a block away, he could see the color of the suspect's vehicle but was unable to tell the make or model of the vehicle and could not read the license plate number.  After the purchase, the informant met with Joseph, returned the drugs purchased and briefed Joseph on the events.

At this point, Joseph "still had learned nothing to dissuade [his] belief that [h]e w[as] investigating a man named Tommy Smith, so [he] continued to search for him using various law enforcement techniques and [his] training as a law enforcement officer."  (Joseph Decl. at ¶ 13).

According to the information provided by the informant, Joseph knew Tommy Smith was "staying" at the Willow Creek Apartments as opposed to living there.  (*Id.* at ¶ 9).  Joseph also knew that Smith told the informant he was from "out of the area."  (*Id.* at ¶ 10).  In addition, Joseph also had information about his skin color, approximate weight and height, and that the suspect had tattoos.  (*Id.* at ¶14).  The video tape provided little help in identifying the suspect.  (*Id.*)

In attempting to locate Tommy Smith, Joseph utilized the Law Enforcement Automated Data System ("LEADS") and the Ohio Law Enforcement Gateway ("OHLEG") to search for the suspect.  Of all the potential individuals, based upon characteristics and location, Plaintiff Thomas Smith was the best match.

Based upon the information from the informant and Joseph's searches as identifying Thomas Smith as the suspect, this evidence was presented to the grand jury.  On April 19, 2012,

Plaintiff Thomas Smith was in indicted for drug trafficking. An arrest warrant issued and on May 10, 2012, the Fostoria Police Department arrested Thomas Smith. The Plaintiff was arrested at his home with his children present. Plaintiff's wife, who was at work, was contacted and she arrived to care for the children before Plaintiff was taken to the jail. Plaintiff spent a total of 32 hours in jail and was released after paying $2,000 in bail.

When Plaintiff's defense counsel received discovery from the prosecutor, there was a meeting between Plaintiff, his defense attorney, and Joseph. At the meeting Plaintiff's defense counsel provided work records to confirm Plaintiff was at his job at the time the controlled buy occurred as well as pointing out that Plaintiff's tattoos were different than those in the video. Joseph checked Plaintiff's tattoos for alteration and found none. (*Id.* at ¶ 22).

Joseph explained his LEADS search to Plaintiff and indicated Plaintiff best fit the description of the suspect as opposed to the other individuals identified through this search mechanism. After reviewing all of the information provided by defense counsel, Joseph contacted the prosecutor the same day to recommend dismissal of the charges against Plaintiff. (*Id.* at ¶ 24). The charges were dismissed and any criminal record was sealed. (*Id.* at ¶ 24).

Plaintiff incurred attorney's fees of $1,850.00 before the charges were ultimately dismissed.

On May 8, 2013, Plaintiffs filed this civil rights action against Joseph, the Seneca County Commissioners and the Seneca County Sheriff.[1] As against Defendant Joseph, Plaintiffs allege violations of 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for a lack of probable cause to arrest. They also assert claims of municipal liability and failure to supervise as against the Seneca County Commissioners and the Seneca County Sheriff. Also alleged are claims for malicious prosecution and a loss of consortium.

---

[1] The original complaint (Doc. No. 1) alleged nine causes of action and was reduced to eight causes of action in the First Amended Complaint (Doc. No. 43). The claims in the Second Amended Complaint (Doc. No. 75) were further reduced to four causes of action as stated herein.

3

I now turn to the dispositive motion, response, and reply.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v.*

*Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### DISCUSSION

**Positions of the Parties**

The Defendants contend there was probable cause for the arrest and that this situation is a case of mistaken identity which does not render it subject to a civil rights violation. Plaintiffs vigorously oppose the Defendants' position. As the issue of probable cause is central to resolution of this case, the discussion focuses on that issue. To that end, I also consider the doctrine of qualified immunity, properly raised by the Defendants as it is an affirmative defense to § 1983 claims.

**Qualified Immunity**

Qualified immunity shields "government officials performing discretionary functions… from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

5

800, 818 (1982).  Qualified immunity provides a broad range of protection, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied,* 506 U.S. 1080 (1993).

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1247, 157 L.Ed.2d 1068 (2004) (Kennedy, J. dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law.")

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Like absolute immunity, qualified immunity "is an *immunity from suit* rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

The analysis employed by the Sixth Circuit in determining qualified immunity focuses on whether a constitutional right was violated and whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right. *Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014), citing *Saucier v. Katz*, 533 U.S. 194 (2001).  In *Pearson*, the Supreme Court approved disregarding the mandatory analytical sequence adopted in *Saucier* and allowed district courts to "exercise their sound discretion in deciding which of the two prongs in the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  555 U.S. at 236.

6

Once the defense of qualified immunity is raised, the burden shifts to the plaintiff to prove defendants are not entitled to qualified immunity.  *Rodriquez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011).

**Probable Cause**

In this instance, the first cause of action frames the issue for discussion:

> 41.  The Defendant Detective Sgt. Don Joseph influenced, or participated in the decision to prosecute the Plaintiff Thomas Smith although there was a lack of probable cause for the criminal prosecution.  In doing so, Defendant Joseph violated Plaintiff Thomas Smith's civil rights.
>
> 42.  Defendants unlawfully searched and seized the Plaintiff Thomas Smith.
>
> 43.  This search and seizure was the direct result of Defendants' Joseph influence and or participation in the decision to prosecute the Plaintiff Joseph Smith although there was a lack of probable cause for the criminal prosecution.
>
> . . .
>
> 47.  The Plaintiffs are seeking actual, compensatory and punitive damages for violation of their civil rights, for malicious prosecution, unlawful search and seizure, out of pocket expenses incurred to defend against the malicious prosecution, bail money not refunded, lost wages, humiliation, and loss of consortium.

(Second Amended Compl., Doc. No. 75).

The issue of whether a constitutional right was violated under the Fourth Amendment requires me to address the issue of whether probable cause existed at the time of Plaintiff's arrest.  *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) ("It is axiomatic that both to establish a *prima facie* case for liability and to overcome a qualified immunity defense, a plaintiff must demonstrate that his or her *own* rights were violated.") (emphasis in original).

An arrest without probable cause violates the Fourth Amendment.  As noted by the Sixth Circuit "[t]he tort of malicious prosecution. . . remedies detention accompanied not by absence of legal process but by *wrongful institution* of legal process." *Id.* at 616, citing *Sykes v. Anderson*, 625 F.3d

7

294, 308 (6th Cir. 2010).  (Emphasis in original).  It is well settled in this Circuit that " 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.' " *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002).  The exception to this rule occurs "where the indictment was obtained wrongfully by defendant police officers who knowingly presented false testimony to the grand jury." *Robertson*, 753 F.3d at 616.

No such evidence exists here.  In a very similar case, *Wilson v. Marion City Police Dept.*, 2011 WL 4699144 (N.D. Ohio 2011), an informant provided the name of Christa Wilson in a controlled drug buy.  The detective working with the informant believed this was the name given to him by the informant while the name of the suspect was actually *Kristen* Wilson.  The detective entered the name of Christa Wilson and the search returned the plaintiff's photo and her physical description which met the description given by the informant.  The detective had access to the paperwork completed by the informant following the drug buy and it listed the name of the supplier as Kristen as opposed to Plaintiff's name of Christa.  The plaintiff was arrested and held approximately 26 hours before the error was discovered. In granting summary judgment, Magistrate Judge Knepp determined probable cause to exist as it was pursuant to an indictment and there was no evidence to contend the indictment was the subject of foul play.  *Id.* at *3-4.

Here, Plaintiffs challenge the sufficiency of Joseph's investigation.  For example, Joseph had access to "Smith's" cell phone number, from the informant, but he did not get the phone number. Joseph also failed to ask the informant to supply the make, model, or license plate of the vehicle the suspect was driving at the time of the drug buy.  While Joseph knew from his own surveillance of the transaction that the suspect's car was silver, he did not go to the Willow Creek Apartments to find the car and get the license plate number.  Joseph also did not interview anyone else in his attempt to identify "Tommy Smith," including the confidential informant, after Plaintiff's photo was obtained from the LEADS search.

8

While Joseph could have taken extra steps to ensure he had the correct individual, such thoroughness, while aspirational, is not required to be compliant with the Constitution.  The Sixth Circuit in *Bakos v. City of Olmstead Falls*, 73 Fed. Appx. 152, 158 (6th Cir. 2003), determined that challenged deficiencies in the investigation prior to grand jury proceedings were insufficient to overcome the presumption that probable cause existed as a result of the indictment.  *See also Martin v. Maurer*, 581 Fed. Appx. 509, 511-12 (6th Cir. 2014) (investigation which failed to utilize a photo array and interview plaintiff's alibi witnesses or determine the accuracy of statements did not violate constitutional rights as probable cause was established by the indictment); *Fettes v. Hendershot*, 375 Fed. Appx. 528, 532 (6th Cir. 2010) (in executing a valid arrest warrant, where police mistakenly identified the person to be arrested, the arrest did not violate the Constitution) citing *Hill v. California*, 401 U.S. 797, 802 (1971); *McCutchen v. Tipton County*, 430 F.Supp.2d 741, 745 n.4 (W.D. Tenn. 2006) (listing cases from the circuit in which courts refused to find constitutional violations where an individual was mistakenly arrested subject to a warrant issued for someone with the same name).

As there is no evidence to question the propriety of the grand jury determination, I find probable cause existed for the arrest.  In the absence of a constitutional violation, I find Defendant Joseph is entitled to qualified immunity and he is entitled to summary judgment as to the first cause of action.

**Municipal Liability**

Plaintiffs' second cause of action asserts municipal liability for failure to supervise and train its police officers.  As recently noted by the Sixth Circuit, "the deprivation of a constitutional right is a prerequisite to municipal liability under § 1983." *Pollard v. City of Columbus*, __F.3d__, 2015 WL 925887 (6th Cir. March 5, 2015). (Citation omitted).  Since the Plaintiffs are unable to establish a

9

constitutional violation, Defendants Seneca County Commissioners and the Seneca County Sheriff are also entitled to judgment as a matter of law.

**State Law Claims**

Finally, Plaintiffs' remaining state law claims, loss of consortium and malicious prosecution, must also be dismissed as a matter of law as I have determined Plaintiffs did not establish the violation of a constitutional right.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. No. 63) is granted.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
